UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC,<br><br>               Plaintiffs,<br>and<br><br>Zhejiang Jingli Bearing Technology Co., Ltd.,<br><br>            Consolidated Plaintiff,<br><br><br>    v.<br><br>United States.<br><br>           Defendant. | Cons. Ct No. 24-00025 |

**MEMORANDUM OF LAW IN SUPPORT OF THE
RULE 56.2 MOTION OF PLAINTIFFS
SHANGHAI TAINAI BEARING CO., LTD. AND
C&U AMERICAS, LLC, FOR JUDGMENT
UPON THE AGENCY RECORD**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel for Plaintiffs

Dated: August 13, 2024

# Table of Contents

Table of Contents.................................................................................i

Table of Authorities.......................................................................... ii

I.     INTRODUCTION ..........................................................................1

II.    STATEMENT PURSUANT TO RULE 56.2(c)............................................1

    A. Administrative Determination Under Review...........................................1

    B.  Issues of Law ........................................................................ 2

    C.  Summary Of Arguments...............................................................3

    D. Statement Of Facts ....................................................................3

III.    STANDARD OF REVIEW ..............................................................6

IV.    ARGUMENT..............................................................................9

    A. Tainai Has Not Sold Goods at Prices that Difer Significantly
    Among Purchasers, Regions or Periods of Time ......................................9

       1.      The Facts Show That There is No Significant Differences
              in Purchasers, Regions or Time Periods ....................................9

       2.      Differential Pricing Analysis Not Authorized by the
              Statute in Reviews.................................................15

V.     CONCLUSION.........................................................................19

## TABLE OF AUTHORITIES

Court Cases:

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) .................8,9

*Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 123 S.Ct. 748, 154 L.Ed.2d 653 ..........................................................................................18

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984)................................................................................ 3,6,7,17

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197 (1938) ..........................8

*Diversified Products Corp. v. United States*, 6 CIT 155 (1983) ..............................8

*Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006)..................................................................................9

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997).......................8

*JBF RAK Llc. v. United States,* 790 F.3d 1358 (Fed. Cir. 2015)..................16,17,18

*Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183 (Ct. Int'l Trade 2009)..................................................................................3,9

*Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce*, et al. 603 US ___ (June 28, 2024) ..................7,17

*Marx v. Gen. Revenue Corp.,* 568 U.S. 371, (2013)................................................18

*United States v. Vonn,* 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90....................19

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ........................................8

*USX Corp. v. United States*, 11 CIT 82, 655 F. Supp. 487 (1987)...........................8

Statute:

19 U.S.C. § 1516a (a)(2)(B)(iii)................................................................................3

19 U.S.C. §1516a(b) .................................................................................................6

19 U.S.C. §1673d(c)(5)..............................................................................................6

19 U.S.C. 1677f-1 (d)(1)(B) ...............................................................................9,15

Administrative:

19 C.F.R. § 351.414(b) ............................................................................16

19 C.F.R. § 351.414(b)(1)-(3)..................................................................16

*Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof,
Finished or Unfinished, from the People's Republic of China*, 52
Fed. Reg. 22667 (June 15, 1987)....................................................3

*Tapered Roller Bearings from the People's Republic of China;
Amendment to Final Determination of Sales at Less Than Fair
Value and Antidumping Duty Order in Accordance With Decision
Upon Remand*, 55 Fed. Reg. 6669 (February 26, 1990) ................4

I.    **INTRODUCTION**

This is an appeal from the 2021/22 administrative review of the antidumping order on Antifriction Bearings from the People's Republic of China.  Plaintiff Shanghai Tainai Bearing Co., Ltd. was a mandatory respondent in the review, and Plaintiff C&U Americas, LLC is the importer and CEP entity.  Both Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC,  were parties to the proceeding, having submitted numerous questionnaire responses and comments, as well as case briefs.

The Plaintiffs assert the following errors in the Commerce Department's ("Commerce's") final determination:

- The Department improperly found a pattern of prices that differed significantly among purchasers, regions or time periods and thus applied an alternate method to calculate the margin.  The facts show that prices were consistent and did not differ significantly among purchasers, regions or time periods.

- The record also shows that this was a review, and the statute authorizing the Department to consider such methodology only applies in investigations.  The Department sought to fill the perceived gaps using *Chevron* deference, but such doctrine is no longer valid.

II.    **STATEMENT PURSUANT TO RULE 56.2(c)**

    A. **Administrative Determination Under Review**

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest the final results of Commerce's §751 administrative review of *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished from the People's Republic of China* ("Final Results") 89 Fed. Reg. 1548 (January 10, 2024) (APPX3144)[1] as amplified by the Issues and Decision Memorandum. (APPX3116).

In the Final Results, Commerce calculated a margin of 24.78% for plaintiff Tainai. (APPX3144) . Commerce also made a finding under differential pricing analysis of a margin of 17.57% using the A to T method of U.S. sales that passed the Cohen's D test and A to A for sales which do not pass and a margin of 0% using the A to A method.(APPX3137).

## B. **Issues of Law**

The Plaintiffs present the following issue of law.

1. **Issue.**   Whether the Department's finding of a pattern of prices that differed significantly among purchasers, regions or time periods is not grounded in facts and thus was arbitrary and capricious and an abuse of discretion.

**2. Issue.**   Whether the recent Supreme Court decision in *Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce, et al.*

---

[1] Pursuant to direction of Chambers, the record will be reported by number.  Public documents are in the range APPX1000 to APPX3171 and confidential documents are in the range APPX80000 to APPX86457.

603 US ___ (June 28, 2024) has invalidated the Department of Commerce's filing of the gap in the statute by applying differential pricing to reviews, notwithstanding the absence of such delegation in the statute.

### C. **Summary Of Arguments**

- The Department cannot find the existence of differential pricing where the record demonstrates no or minimal changes in price during the POR.   The record shows that for more than 88% (by volume) of all CONNUM's had at most one price change during the Period of Review.  The record further shows that the price change was less than 10% for virtually all of these transactions.  The Department's use of a Cohen's D analysis in this matter is misplaced as the underlying data is simple and straightforward and establishes that differential pricing did not occur.

- The Statute only authorizes the Department to engage in a differential pricing analysis in investigations.   The Department's application of a differential pricing analysis was done to fill gaps under the *Chevron* doctrine.   The elimination of the *Chevron* doctrine means that the filing of the gap in the statute by the Department is unlawful.

### D. **Statement Of Facts**

The antidumping order on Tapered Roller Bearings from China was published on June 15, 1987.  See *Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China*, 52 Fed. Reg. 22667 (June 15, 1987), as amended, *Tapered Roller Bearings from the People's*

*Republic of China; Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order in Accordance With Decision Upon Remand*, 55 Fed. Reg. 6669 (February 26, 1990). This appeal concerns the 2021/22 administrative review. See *Initiation of Antidumping and Countervailing Duty Administrative Reviews* 87 Fed. Reg. 48459 (August 9, 2022). (APPX1068) In the segment of the proceeding under appeal, Commerce issued its preliminary results as *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2020–2021,* 87 FR 40792 (July 8, 2022) (APPX3008 – 3010). Commerce calculated a preliminary rate of 27.02% for Tainai. (APPX3008 - 3010). Commerce's Final Results and final IDM were issued as set forth in the "Administrative Determination Under Review," *supra* and such results calculated a rate of 24.78% for Tainai. (APPX3144)

Commerce also released as part of its determination released the results of its differential pricing analysis showing that the rates under the three options are:

Average to Average (Preferred 0.00%), Average to Transaction for Sales which pass the Cohen's D test and Average to Average Method for Sales which do not pass (17.57%); Average to Transaction for All U.S. Sales (24.78%). (APPX3137).

4

On August 3, 2021, pursuant to a request for review filed on June 30, 2022 by Koyo Bearings North America LLC (APPX1053) the Department initiated the Administrative Review underlying this matter.  See *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 87 Fed. Reg. 48459 (August 9, 2022). (APPX1068)

During the course of the administrative review, plaintiffs submitted responses to the Department's questionnaires.  Plaintiffs fully and completely responded in a timely fashion to all questionnaires and supplemental questionnaires issued by the Department.

On July 7, 2023 the Department published the preliminary results for the administrative review.   See *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2021–2022,* 88 Fed. Reg. 43290 (July 7, 2023) Commerce calculated a preliminary rate of 27.02% for Plaintiff Tainai. (APPX3008 – 3010.)

On August 7, 2024, plaintiffs filed an administrative case brief with the Department of Commerce challenging the preliminary results. (APPX3049 – 3081 and APPX86097 - 86129).

On August 14, 2024, the domestic industry filed an administrative rebuttal brief with the Department of Commerce. (APPX3082 – 3093).

On January 3, 2024 the Department issued the final results. (APPX3107 –

3115)  On January 10, 2024,  these results were published in the Federal Register

as *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished from the*

*People's Republic of China; 2021-2022* ("Final Results") 89 Fed. Reg. 1548

(January 10, 2024). (APPX3114 – 3146).  The Department also issued an "Issues

and Decisions Memorandum" in connection with the final results. (APPX3116 –

3134.)  In the final results the Department applied its differential pricing analysis

and found a final rate of 24.78%.(APPX3114 – 3146).

## III.  STANDARD OF REVIEW

The Court will hold unlawful Commerce determinations that are unsupported

by substantial evidence on the record or are not otherwise in accordance with law.

19 U.S.C. §1516a(b). At one time, in order to determine whether Commerce's

interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law,"

the courts reviewed the statute to determine whether "Congress has directly spoken

to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Res. Def. Council,*

*Inc.,* 467 U.S. 837, 842 (1984).   This doctrine was recently summarized by the U.S.

Supreme Court as follows:

> Our *Chevron* doctrine requires courts to use a two-step framework to
> interpret statutes administered by federal agencies. After determining
> that a case satisfies the various preconditions we have set
> for *Chevron* to apply, a reviewing court must first assess "whether
> Congress has directly spoken to the precise question at issue." *Id.,* at
> 842. If, and only if, congressional intent is "clear," that is the end of

the inquiry. *Ibid.* But if the court determines that "the statute is silent or ambiguous with respect to the specific issue" at hand, the court must, at *Chevron*'s second step, defer to the agency's interpretation if it "is based on a permissible construction of the statute." *Id.,* at 843. The reviewing courts in each of the cases before us applied *Chevron*'s framework to resolve in favor of the Government challenges to the same agency rule.

*Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce*, et al. 603 US ___ (June 28, 2024)

The concept of *Chevron* deference was overturned by *Loper Bright Enterprises et. al. v. Raimondo*, 603 U.S. _____ (2024). The Supreme Court stated:

The deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA.
*Loper* at ____

The Supreme Court summed up the *Lope*r decision by stating:

*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and **under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous**.

While this is a very new precedent, and has not yet been addressed by the Court of International Trade, it is clearly relevant where, as here, Commerce has claimed that the statute contains a gap or ambiguity and has sought to fill the gap or ambiguity in the statute. As discussed further below, Commerce has, in fact, expressly relied upon *Chevron* to support its interpretation of the statute.

7

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938).  Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence."  *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted).  Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {that} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987).  The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Commerce also must make its decisions based on a fair and balanced comparison of the data. To do otherwise is arbitrary and capricious. *See Atlantic Sugar, Ltd. v. United States*, 744 F.2d at 1562 ("substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence.") *See also, Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183, 1192 (Ct. Int'l Trade 2009).

Commerce is required to objectively evaluate all data on the record. Thus, the agency must hold its preferences to the same test as it uses to evaluate respondent's proffered data. *See, e.g., Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006) (holding that Commerce must justify its decisions).

## IV.  **ARGUMENT:**

### A.  **Tainai Has Not Sold Goods at Prices that Difer Significantly Among Purchasers, Regions or Periods of Time**

1. **The Facts Show That There is No Significant Differences in Purchasers, Regions or Time Periods**

The language of the statute (19 U.S.C. 1677f-1 (d)(1)(B)), assuming that it even applies, is quite clear. It states:

**(d)Determination of less than fair value**

**(1)Investigations**

* * *

**(B)Exception**

The administering authority may determine whether the subject

9

merchandise is being sold in the United States at less than fair value by comparing the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise, if—

**(i)** there is a pattern of export prices (or constructed export prices) for comparable merchandise **that differ significantly among purchasers, regions, or periods of time**, and

**(ii)** the administering authority explains why such differences cannot be taken into account using a method described in paragraph (1)(A)(i) or (ii).

19 U.S.C. 1677f-1 (d)(1)(B) (Emphasis Added)

Even if the Department's application of diferential pricing is authorized by the statute, which as we will show below it is not, the Department's analysis in this matter is flawed. The Department has sought to analyze the price differences by comparing **all** sales prices in the U.S. sales database to each other without taking into account the nature of the products. In an order such as this one, the sizes and the costs of the products are diverse. The bearings in question range in weight from [          ] KG. (APPX85089) . These bearings will necessarily have a significant variance in price because of their size. This difference is not, however, one of the differences recognized by the statute as a basis for applying an alternate methodology. The express language directs the examination of differences in *purchasers, regions, or periods of time*. Not included in this list of factors, is the different nature of the goods. As such, the analysis should be conducted on a CONNUM basis to avoid the nature of the goods resulting in an inaccurate finding of differences.

10

Public Version

In support of this, Tainai has conducted an analysis of the price data from its questionnaire responses and a summary of this analysis was provided in the case brief at Exhibit CB-1.  (APPX86128 – 86129),  This analysis shows that taking into account size, there is virtually no difference in price based on purchasers, regions or periods of time, and to the extent that there are differences, such differences are not significant.

An analysis of the data demonstrates a number of additional points. Table CB-1 (APPX86128 – 86129) lists all of the CONNUM's and reports by CONNUM the total quantity, the quantity of by sales changes, the price point at which each CONNUM was sold, and the difference of the price change between the first and second price change.  This data shows that only **4 of 40** CONNUM's had more than 2 price changes during the POR.   It further shows that only **1 of 40** CONNUM's changed 3 times during the POR.  It also shows that the price change between the first and second CONNUM ranged from [                    ] with most of the price changes in the range of [                ]. This is not a significant difference based on customer, region or time.  The change is inherently not significant as such change is in a range of less than 10% and the majority of such changes only occurred a single time.   Rather, to the extent that there are significant variances in price, they occur only between CONNUM's of different sizes and occur solely because of the nature of the goods and the relative costs and sizes of the goods.  These are not variances

11

over time, customer or region, for if there were such variances, one would see more price variances within each CONNUM.

Table CB-2 provides the same data as Table CB-1 from the case brief, but is organized by total quantity. This analysis shows that an examination of the top ten by volume, that 75% of the volume only changed price once during the POR. All of this data is not predicated on a complicated statistical analysis, but rather based on the plain language of the statute and a modicum of common sense. In contrast, the Department has applied a complex, and heavily criticized, statistical method which does not appear to take into account the nature of the goods in considering whether there is a variance. In fact, the Department's sole test is whether this statistical test is satisfied, not where the actual statutory test has been satisfied. (See APPX3001 – 3003).

Public Version

## Table CB-2

| CONNUM | Total Qty | Most Sales per CONNUM Price | Qty | Pct | 2nd Most Sales per CONNUM Price | Qty | Pct | 3rd Most Sales per CONNUM Price | Qty | Pct | 4th Most Sales per CONNUM Price | Qty | Pct | Price 1st to 2nd | Percent of total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |
| [        ] | | | | | | | | | | | | | | | ] |

13

[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]
[  ]

Tainai submits that Cohen's D is nothing more than one of many tools which the Department can use to conduct the analysis required by the statute. Where, as here, the data is clear and straightforward, there is no reason for the Department to resort to a Cohen's D analysis, and that it should examine the data to determine whether the statutory test (assuming that it even applies) has been met. Tainai submits that in this case, the data establishes by clear and convincing evidence that there are no significant price variances as a result of customer, region or time, and thus the condition to use an alternate calculation method has not been satisfied. The Department should, therefore, have calculated the margin using the Average to Average methodology, and thus calculated a margin of 0% for Tainai for this review.

2.    Differential Pricing Analysis Not Authorized by the Statute in Reviews

The Department's authorization to conduct a differential pricing analysis is based in 19 U.S.C. 1677f-1 (d)(1)(B). This provision reads in relevant part:

**(d)Determination of less than fair value**

    **(1)Investigations**

        * * *

    **(B)Exception**

        The administering authority may determine whether the subject merchandise is being sold in the United States at less than fair value by comparing the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise, if—

15

> **(i)** there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time, and
> **(ii)** the administering authority explains why such differences cannot be taken into account using a method described in paragraph (1)(A)(i) or (ii).

This provision, by its express language, applies to investigations, not reviews, but the Department has elected to apply this to reviews as well in order to fill what it perceived as a gap in the statute. The normal method for calculating a margin is Average to Average.

This issue was previously considered by the Court of International Trade and the U.S. Court of Appeals for the Federal Circuit. The seminal opinion is the U.S. Court of Appeals opinion in *JBF RAK Llc. v. United States,* 790 F.3d 1358 (Fed. Cir. 2015). In the *JBF RAK* case the Federal Circuit held:

> Pursuant to 19 C.F.R. § 351.414(b) (2012), "[c]omparison of normal value with export price (constructed export price)," there are three methods by which value may be compared to export price or constructed export price: (1) average-to-average: "a comparison of the weighted average of the normal values with the weighted average of the export prices (and constructed export prices) for comparable merchandise;" (2) transaction-to-transaction: "a comparison of the normal values of individual transactions with the export prices (or constructed export prices) of individual transactions for comparable merchandise;" and (3) average-to-transaction: "a comparison of the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise." 19 C.F.R. § 351.414(b)(1)-(3). The regulation also states that in choosing the method of review *"in an investigation* or review, [Commerce] will use the average to-average method unless [it] determines another method is appropriate in a particular case." *Id.* at § 351.414(c)(1) (emphasis added).

Here, Commerce "exercised its gap-filling discretion by applying a comparison methodology{, i.e. the average-to-transaction comparison

method,} in reviews that parallels the methodology used in investigations." *JBF RAK.* 991 F,Supp.2d at 1347. JBF RAK points to no authority that contradicts this practice. Thus, contrary to JBF RAK's claims, Commerce's decision to apply its average-to-transaction comparison methodology in the context of an administrative review is reasonable. Because Congress did not provide for a direct methodology, Commerce properly "fill{ed} th{at} gap." *Chevron.* 467 U.S, at 843, 104 S.Ct. 277
*JBF RAK Llc.* at 1364.

Thus, the entire underpinning of the *JBF RAK* opinion was the finding of a gap and the filing of this gap by the Department using *Chevron* deference. This is critical in the case at bar as much of the Department's support for its decision to use the alternate methodology is based on the concept of filing in the gaps. In the issues and decisions memorandum the Department stated:

As an initial matter, we note that there is nothing in section 777A(d) of the Act that mandates how Commerce measures whether there is a pattern of prices that differ significantly or explains why the A-to-A method or the Transaction to-Transaction method cannot account for such differences. On the contrary, carrying out the purpose of the statute **requires a gap filling exercise properly** conducted by Commerce. APPX003131 – APPX003132

Tainai submits that this Court, in light of the rejection of *Chevron* by *Looper,* has the ability to reconsider this issue and determine whether this statute applies to both investigations and reviews, or only to investigations. As noted by the Court in *Looper***:**

Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. . . . But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous. *Looper* at _____.

Tainai submits that the plain language of the statute, which expressly applied to investigations, but is silent on whether it applies to reviews, clearly is intended

17

to apply only to investigations.  At the time that the legislature enacted this provision, the fact that both investigations and reviews would occur was well established in the law.   A critical point is the Statement of Administrative Action cited in the *JBF* matter in which it was stated:

> BF RAK also contends the Statement of Administrative Action ("SAA") accompanying the Uruguay Round Agreements Act do{es} not provide the authority to apply the explicit exception for investigations in Section 1677f-1(d)(1)(B) to administrative reviews." Appellant's Br. 4. JBF RAK relies on Article 2.4.2 of the SAA, which states, "{i}n a departure from current U.S. law, Article 2.4.2 provides that in investigations (not reviews), national authorities normally will establish dumping margins by comparing either: a weighted-average of normal values to a weighted-average of export prices of comparable merchandise; or normal value and export price on a transaction-to-transaction basis." Appellant's Br. 12 (quoting SAA, H.R. No. 103-316, vol. 1, at 810 (1994)), reprinted in 1994 U.S.C.C.A.N 4040, 4153 (emphasis added). According to JBF RAK, "{t}he parenthetical language in the SAA (not reviews)' clearly and unambiguously establishes Congress' understanding of the obligation under the agreement that the targeting allegation is to be considered and, if it exists, an alternative comparison method is applied in investigations and not reviews.
> *JBF* at 1364

The fact that the legislature did not include reviews, knowing that such reviews were being conducted, is clear evidence that it did not intend reviews to be subject to differential pricing analysis.   The legal maxim " *Expressio unius exclusio alterius*" ("the inclusion of one thing implies the exclusion of another") is applicable in this case.  See *Marx v. Gen. Revenue Corp.,* 568 U.S. 371, 392 (2013)   In *Marx* the Supreme Court stated:

> The *expressio unius* canon that they invoke does not apply "unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it," *Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653, and can be overcome by "contrary indications that adopting a particular rule or statute was probably not

meant to signal any exclusion," *United States v. Vonn,* 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90.

With respect to this particular statute, Congress in drafting the antidumping and countervailing duty law has been very careful to differentiate between reviews and investigations.    This is an indication that the legislature understands the difference between reviews and investigations and where, as here, only the investigation is cited, the absence of reference to reviews is telling.

The language is clear.   There is no gap, and the plain language of the statute should control.

## V.    **CONCLUSION**

Shanghai Tainai Bearing Co., Ltd. and Plaintiff C&U Americas, LLC therefore respectfully request that this Court grant its motion for Judgment on the Agency Record and remand this case to Commerce with instructions consistent with the points set forth in this memorandum.  Specifically, the Court should find:

That the use of a differential pricing analysis in this case is inappropriate;

That there is no pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time;

That the Department should calculate margins comparing average to average; and

19

That the margin of 0% calculated in the preliminary and final results should apply.

By making this change, the Court will correct clear error made by the Department in its calculation of the final results.

Respectfully submitted,

/s/ David Craven
David Craven

Counsel to Shanghai Tainai Bearing Co., Ltd.
and C&U Americas, LLC

Dated: August 13, 2024