**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| SHANGHAI TAINAI BEARING CO., LTD. & C&U AMERICAS, LLC, <br><br>And<br><br>ZHEJIANG JINGLI BEARING TECHNOLOGY CO., LTD.,<br><br>  Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>  Defendant. | **PUBLIC Version**<br>Business Proprietary Information at Pages 2-3<br><br><br><br><br><br><br>Consol. Court No. 24-00025 |

**DEFENDANT'S RESPONSE TO THE COURT'S AUGUST 22, 2024 ORDER**

Pursuant to the Court's Order issued on August 22, 2024, defendant, the United States, respectfully submits this response to the Court's questions relating to defendant's violation of this Court's statutory injunction. ECF No. 26. As an initial matter, and as set forth more fully below, the Government apologizes to the Court and the parties for the inadvertent liquation of entries. We recognize the utmost importance of complying with the Court's orders and have instituted additional measures to ensure that the Court's injunctions are expeditiously transmitted to U.S. Customs and Border Protection (CBP).

The Court directed us to provide a response detailing our violation of the Court's injunction and ordered us to file a table with specific information. We have appended two tables in response, identifying for each consolidated case, each entry subject to the Court's statutory injunctions, along with information regarding the dollar value of each entry, which plaintiff is

associated with the entry, whether and when the entry was liquidated, and when the entry was restored to unliquidated status. ECF No. 26, pp. 2-3.

Table 1 lists all entries exported by Shanghai Tainai Bearing Co., Ltd. (Shanghai Tainai) and subject to the Court's statutory injunction in Ct. No. 24-00025. A total of [   ] entries are covered by the Court's statutory injunction in Ct. No. 24-00025, all of which were inadvertently liquidated (and which have been returned to suspended status).

Table 2 lists all entries exported by Zhejiang Jingli Bearing Technology Co., Ltd. (Zhejiang Jingli) and subject to the Court's injunction in Ct. No. 24-00038. Table 2 confirms that no entries of subject merchandise from the period of review that were exported by Zhejiang Jingli were liquidated after the Court issued its injunction in Ct. No. 24-00038, and, in fact, Zhejiang Jingli does not have any suspended entries that are covered by the Court's injunction in Ct. No. 24-00038.[1]

We address below the remaining questions in the Court's Order: which of the two injunctions were violated; the total dollar value of the liquidated entries; a comparison of the

---

[1] The statutory injunction entered on March 5, 2024 in Ct. No. 24-00038 covered unliquidated entries that were "exported by Zhejiang Jingli Bearing Technology Co., Ltd." and "that were entered, or withdrawn from warehouse, for consumption, during the period June 1, 2021 through May 31, 2022." As a result of CBP's inquiry into Zhejiang Jingli's entries pursuant to the Court's Order, defendant discovered that no entries were covered by the Court's statutory injunction entered in Ct. No. 24-00038, because at the time the Court issued the statutory injunction in that case there were no unliquidated entries "exported by Zhejiang Jingli Bearing Technology Co., Ltd." and "that were entered, or withdrawn from warehouse, for consumption, during the period June 1, 2021 through May 31, 2022." Defendant further determined that there are no suspended entries attributable to Zhejiang Jingli that were entered during the review period and is considering whether to file a motion to dismiss Zhejiang Jingli's claims. *See, e.g.*, *Shandong Huarong Mach. Co. v. United States*, Ct. No. 06-00345, 2008 WL 5159774, at *5 (Ct. Int'l Trade Dec. 10, 2008) (stating "{a}fter an antidumping review determination, if a party's entries are liquidated prior to judicial review of the determination and antidumping duties are assessed, any outstanding challenges as to those entries are rendered moot because liquidation, absent errors by Commerce or Customs, places the entries outside the jurisdiction of the court." (internal citations omitted)).

dollar value, as a percentage, to the total dollar value of entries subject to the Court's injunctions; what caused defendant to act in violation of the Court's injunction; and the steps we have taken and will take to avoid a future violation of the Court's injunctions.

**(1) Which of the Court's two injunctions did the Defendant violate?**

The statutory injunction in Ct. No. 24-00025 was violated. The statutory injunction for Ct. No. 24-0038 was not. We apologize for the confusion created in the proposed status report by the inadvertent reference to the Court's statutory injunction entered in Ct. No. 24-00038. ECF No. 24-1 (Aug. 21, 2024). Defendant confirms that this reference was in error and that, in fact, defendant inadvertently liquidated entries covered by the Court's statutory injunction entered in Ct. No. 24-00025, on March 25, 2024. ECF No. 12.

In Ct. No. 24-00038, Commerce timely transmitted to CBP the injunction instructions related to the statutory injunction entered in Ct. No. 24-00038, on March 5, 2024. No entries covered by the statutory injunction entered in Ct. No. 24-00038 were liquidated after the Court issued the injunction, nor could they have been because there Zhejiang Jingli Bearing Technology, Co. Ltd did not enter any merchandise during the applicable period.

**(2) What was the total dollar value of all the entries liquidated?**

The Court ordered defendant to provide the total dollar value of the entries liquidated. ECF No. 26, p. 3. The total dollar amount of the entries that were inadvertently liquidated in Ct. No. 24-00025 is [         ] and is included in the attached Table 1.

Regarding the statutory injunction entered in Ct. No. 24-00038, again, no liquidation of entries of subject merchandise that were entered during the period of review and exported by Zhejiang Jingli occurred after the Court issued the injunction. There were no entries during the period of review to be liquidated.

3

**Business Proprietary Information**

**(3) How does that dollar value compare, as a percentage, to the total dollar value of entries subject to the Court's injunctions?**

The Court ordered defendant to provide a comparison, as a percentage to the total dollar value of the entries subject to the Court's statutory injunctions. ECF No. 26, p. 3. The dollar value of entries liquidated equals 100% of the total dollar value of entries subject to the Court's injunction entered in Ct. No. 24-00025. However, as a result of remedial measures defendant took upon discovering the error, all liquidated entries that were covered by the statutory injunction entered in Ct. No. 24-00025 were returned to unliquidated status and currently remain suspended. Indeed, the Court's injunction Orders provide that "any entries inadvertently liquidated after this order is signed but before this injunction is fully implemented by U.S. Customs and Border Protection shall be promptly returned to unliquidated status and suspended in accordance with this injunction." *See e.g.*, ECF No. 12 at 3.

Regarding the statutory injunction entered in Ct. No. 24-00038, again, no liquidation of entries of subject merchandise that were entered during the period of review and exported by Zhejiang Jingli occurred after the Court issued the injunction.

**(4) What caused the Defendant to act in violation of the Court's injunction?**

As an initial matter, defendant takes this issue very seriously and apologizes for the inadvertent liquidation of entries covered by the Court's statutory injunction entered in Ct. No. 24-00025. In short, the liquidation resulted from inadvertent human errors.

When this Court issues a statutory injunction in cases reviewing antidumping or countervailing duty determinations by Commerce, DOJ and Commerce each have a process in place to ensure the Court's statutory injunction and relevant instructions are transmitted to CBP. They do this because, depending on when an injunction is issued, there can be a lag time large

enough for entries to be liquidated by CBP before it learns of the existence of the injunction. There is a formal backstop to prevent such liquidations from becoming final and to ensure that entries are quickly returned to suspended status. Prior to the existence of Form 24, parties needed a Court order to allow CBP to return entries to suspended status. In part to avoid lengthy motions practice for occasional inadvertent liquidations, Form 24 provided a backstop by including a provision that entries liquidated after an injunction "shall promptly be returned to unliquidated status and suspended in accordance with this injunction."

To prevent inadvertent liquidations from happening, DOJ and Commerce also provide two additional informal backstops. First, the DOJ attorney who is responsible for the case sends a copy of the injunction order to CBP and Commerce, and the Commerce attorneys that have appeared before the Court in the case also receive a CM/ECF notification. Next, upon receiving an injunction, the Commerce team assigned to the case works collaboratively to prepare statutory injunction instructions for CBP, which follow the language of the injunction, and transmit the instructions to CBP. This two-pronged procedure for processing statutory injunctions provides safeguards that work well in nearly all cases involving Commerce.

Unfortunately, in this instance, human errors occurred in the process at both DOJ and Commerce that led to a breakdown in the normal communication chain such that the injunction and injunction instructions were not transmitted to the CBP. First, the Department of Justice did not effectuate service on CBP. Counsel of record for the United States understands the gravity of this Court's injunctions, and, as a new attorney at DOJ, the circumstances of this case have shown areas in which the undersigned counsel should (and will) improve. This is Counsel for the United States' first international trade case, and he was unaware of DOJ's role in the communication chain in effectuating service of injunctions. Counsel for the United States has

5

now familiarized himself with these office polices and has taken steps to ensure future compliance with all court injunctions. Counsel for the United States will introduce changes in his practice to confer with relevant parties to confirm that the terms of any statutory injunction are being followed and ensure that the office's best practices and procedures are being followed. This will ensure that future injunction orders will be fully implemented. The undersigned counsel understands that his failure to serve the proper notice led to CBP's inadvertent liquidation of Shanghai Tainai's entries that were covered by the injunction entered in Ct. No. 24-00025, and humbly apologizes to the Court and the parties for this oversight.

On August 12, 2024, counsel for the United States was contacted by counsel for plaintiff Shanghai Tainai, who stated that he believed that entries within the period of review that were covered by the injunction had been liquidated.[2] Over the next few days, CBP investigated the liquidations and concluded the entries liquidated were subject to the statutory injunction order and were inadvertently liquidated. This work was complete by August 15, 2024, and the following day, CBP provided Shanghai Tainai notice that the entries were now back in suspended status.

**(5) What steps has the Defendant taken or will the Defendant take to avoid a future violation of the Court's injunctions**

The appropriate offices within DOJ and Commerce have both acted to ensure that this type of error does not happen again.

Upon learning of the violation of the Court's statutory injunction, supervisory attorneys assigned to litigation matters in the Office of the Chief Counsel for Trade Enforcement and Compliance at Commerce reinforced to their respective offices the importance of following

---

[2] Upon liquidation of entries, CBP provides notice of liquidation to importers of record.

established procedures upon receipt of a statutory injunction. Supervisory officials at Commerce also communicated directly with the person whose error resulted in the Court's injunction not being timely implemented to understand how the error occurred and how it can be avoided in the future. After identifying how the error occurred, supervisory officials discussed steps for proactively avoiding this issue in the future.

Separately, on August 27, 2024, the Chief Counsel of the Office of the Chief Counsel for Trade Enforcement and Compliance reinforced to all Enforcement and Compliance personnel the importance of timely action upon receipt of a statutory injunction and adherence to established procedures for reviewing and implementing statutory injunctions.

Supervisory attorneys for DOJ and Commerce have also discussed ways to work collaboratively to ensure compliance with the Court's injunctions. DOJ commits to improving its training of newer attorneys and highlighting the standardized statutory injunction process in all future trainings. As an immediate step, the Deputy Director of National Courts has already reminded all attorneys in the National Courts Section of their responsibility to expeditiously effectuate service of injunctions to ensure compliance with the Court's orders. Further, specific to practice before this Court, the section regularly schedules meetings among its attorneys who practice before the Court of International Trade to discuss the law, changes in rules, changes in practice, and other developments. Prior to each meeting, an outline is provided to each attendee, and discussion is led by supervisory attorneys. Our next meeting will occur on September 12, 2024, during which we intend to discuss best practices to effectuate service of statutory injunctions and the importance of ensuring compliance with the Court's orders.

Defendant acknowledges the failure to properly implement this Court's order, and humbly express our sincere apologies for this lapse to not only the Court but the parties.

August 28, 2024

OF COUNSEL:

Jesus N. Saenz
Attorney
Department of Commerce
Office of the Chief Counsel
for Trade Enforcement & Compliance
U.S. Department of Commerce
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-1823
Email: jesus.saenz@trade.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Tate N. Walker
TATE N. WALKER
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0163
Email: Tate.Walker@usdoj.gov

Attorneys for Defendant United States