**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

| | | |
|---|---|---|
| SHANGHAI TAINAI BEARING CO., LTD. | ) | |
| & C&U AMERICAS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Consol. Ct. No. 24-00025 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant, the United States, respectfully provides this notice of supplemental authority concerning this Court's recent decision in *Garg Tube Export LLP v. United States*, Slip Op. No. 24-124, 2024 WL 4799475 (Ct. Int'l Trade November 7, 2024).  The attached decision, particularly pages 16-20, addresses an argument made by the plaintiff in the *Garg Tube* litigation that "when *Loper Bright* overruled *Chevron* {internal citations omitted}, it called into question this Court's approval of the differential pricing methodology" and "that under *Loper Bright*, the Court of Appeals would no longer uphold Commerce's differential pricing methodology." *Id.* at *6, and *8 (citing *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984)); Ex. A, p. 16, 20. The same argument is raised by plaintiffs in this case.  *See generally* Shanghai Mot., ECF No. 22 (August 13, 2024).  In the context of considering whether plaintiff exhausted its administrative remedies, the Court in *Garg Tube* addressed plaintiff's argument and held that "Congress afforded flexibility to Commerce under 19 U.S.C. § 1677f-1(d)(B) by inserting the phrase 'differ

significantly,'" and, thus, concluded that "*Loper Bright* affects no material issue" in the case.

*Garg Tube,* 2024 WL 4799475 at *9; Ex. A, p. 20.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  |  |
|  | BRIAN M. BOYNTON |
|  | Principal Deputy Assistant Attorney General |
|  |  |
|  | PATRICIA M. McCARTHY |
|  | Director |
|  |  |
|  | s/ L. Misha Preheim |
|  | L. MISHA PREHEIM |
|  | Assistant Director |

OF COUNSEL:
JESUS N. SAENZ
Senior Attorney
Office of the Chief Counsel for Trade
Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

s/ Tate N. Walker
TATE N. WALKER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:    (202) 307-0163
Email: Tate.Walker@usdoj.gov

December 16, 2024

*Attorneys for Defendant*

# Exhibit A

Slip Op. 24-124

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **GARG TUBE EXPORT LLP and GARG TUBE LIMITED,** | |
| **Plaintiffs,** | |
| v. | **Before: Claire R. Kelly, Judge** |
| **UNITED STATES,** | **Court No. 21-00169** |
| **Defendant.** | **PUBLIC VERSION** |
| **and** | |
| **NUCOR TUBULAR PRODUCTS INC. and WHEATLAND TUBE,** | |
| **Defendant-Intervenors.** | |

## <u>OPINION</u>

[Sustaining the Department of Commerce's final remand redetermination.]

Dated: November 7, 2024

<u>Ned H. Marshak</u>, <u>Dharmendra N. Choudhary</u>, and <u>Jordan C. Kahn</u>, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, NY and Washington, D.C., for plaintiffs Garg Tube Export LLP and Garg Tube Limited.

<u>Robert R. Kiepura</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. Also on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Franklin E. White, Jr.</u>, Assistant Director. Of counsel were <u>Jospeh Grossman-Trawick</u> and <u>Shelby M. Anderson</u>, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

<u>Robert E. DeFrancesco, III</u>, <u>Alan H. Price</u>, and <u>Theodore P. Brackemyre</u>, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Tubular Products Inc.

Roger B. Schagrin, Alessandra A. Palazzolo, Christopher T. Cloutier, Elizabeth J. Drake, Jeffrey D. Gerrish, Luke A. Meisner, Michelle R. Avrutin, Nicholas J. Birch, and William A. Fennell, Schagrin Associates, of Washington, D.C., for defendant-intervenor Wheatland Tube.

Kelly, Judge: Before the Court is the U.S. Department of Commerce's Final Remand Results Pursuant to Court Remand, July 8, 2024, ECF No. 77-1 ("Second Remand Results") in the 2018–2019 administrative review of the antidumping duty ("ADD") order on welded carbon steel standard pipes and tubes from India. See Welded Carbon Steel Standard Pipes and Tubes From India, 86 Fed. Reg. 14,782 (Dep't Commerce Mar. 19, 2021) ("Final Results"), as amended by the Final Results of Redetermination Pursuant to Court Remand, Mar. 20, 2023, ECF No. 42-2 ("First Remand Results"). In Garg Tube Export LLP v. United States, 698 F.Supp.3d 1230 (Ct. Int'l Trade 2024) ("Garg I"), the Court remanded to Commerce to reconsider or further explain its decision to apply an adverse inference when selecting facts otherwise available. Garg I, 698 F.Supp.3d at 1242. The Court sustained Commerce's use of its differential pricing methodology because Plaintiffs Garg Tube Export LLP and Garg Tube Limited ("Garg") failed to challenge its use before the agency. Id. On remand, Commerce, under respectful protest,[1] applies partial facts otherwise available without an adverse inference to determine the cost of production for the merchandise pursuant to Section 776(a) of the Tariff Act of 1930, as amended,

---

[1] The Court of Appeals for the Federal Circuit ("Court of Appeals") has upheld Commerce's right to file remand results under protest while still preserving its right to appeal. Viraj Grp., Ltd. v. United States, 343 F.3d 1371, 1376 (Fed. Cir. 2003).

19 U.S.C. § 1677e(a).[2]  Second Remand Results at 2–3.  For the reasons that follow,

Commerce's redetermination is sustained.

## BACKGROUND

The Court presumes familiarity with the facts of this case as set out in its

previous opinion ordering remand to Commerce, see Garg I, 698 F.Supp.3d at 1234–

35, and now recounts only those facts relevant to the Court's review of the Second

Remand Results.  On October 10, 2019, Plaintiffs Garg Tube Export LLP and Garg

Tube Limited's ("Garg") filed its Section A Questionnaire Response to Commerce's

July 15, 2019, administrative review.  See Initiation of Antidumping and

Countervailing Duty Administrative Review, 84 Fed. Reg. 33,739 (Dep't Commerce

July 15, 2019); [Garg] Sect. A Resp. To Origin. Questionnaire at 1, PDs 38–41, CDs

5–8, bar code 3898821-01 (Oct. 10, 2019). In the questionnaire, Garg reported that it

had an unaffiliated supplier without knowledge of the destination of the pipe and

tube that it sold to Garg.[3]  See [Garg] Sect. A Resp. To Origin. Questionnaire at 38,

PDs 38–41, CDs 5–8, bar code 3898821-01 (Oct. 10, 2019).  Commerce requested the

cost information directly from the unaffiliated supplier, and asked Garg to obtain the

information from the supplier as well.  See re: Letter from Commerce to [Garg's]

Suppliers Requesting Costs at 1, PDs 136–38, CDs 63–65 bar codes 3971275-01,

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.
[3] The unaffiliated, uncooperative supplier at issue is [[          ]].  See Second Remand Results at 3.

3971278-01, 3971282-01 (May 5, 2020); [Commerce's] Order for [Garg] Suppl. Questionnaire at 1, PD 94, CD 35, bar code 3922259-01 (Dec. 19, 2019).

In the preliminary results, Commerce relied upon partial facts otherwise available with adverse inferences to fill the gap in information that was not supplied by Garg's unaffiliated supplier. See <u>Welded Carbon Steel Standard Pipes and Tubes from India; 2018–2019</u>, 85 Fed. Reg. 44,860 (Dep't of Commerce, July 20, 2020) ("<u>Preliminary Results</u>") and accompanying Preliminary Decision Memo. at 9. ("Prelim. Decision Memo."). Commerce continued to apply adverse inferences in selecting facts otherwise available in its final determination, published on March 19, 2021, finding that Garg did not act to the best of its ability "in attempting to obtain the supplier's costs" because the efforts made by Garg "did not serve as a strong inducement for the supplier in question to cooperate." See <u>Final Results</u> and accompanying Issues and Decision Memo. for the Final Results of the [ADD} Admin. Review; 2018-2019, A-533-502, (Mar. 19, 2021), ECF No. 24-5 at 41. ("Final Decision Memo"). Commerce used adverse inferences when selecting from facts otherwise available for the missing supplier's costs invoking <u>Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States</u>, 753 F.3d 1227, 1232 (Fed. Cir. 2014), and further made a cost-based particular market situation adjustment to calculate Garg's dumping margin. Final Decision Memo. at 19–23; 38–42.

On February 2, 2023, Commerce requested remand for its determination to comply with the Court of Appeals' decision in <u>Hyundai Steel Co., Ltd. v. United States</u>, 19 F.4th 1346 (Fed. Cir. 2021), and the Court granted the request.  <u>See</u> Def.'s Consent Mot. To Remand at 1, Feb. 2, 2023, ECF No. 37; Order at 1, Feb. 3, 2023, ECF No. 40.  Commerce filed its first remand results on March 20, 2023.  <u>See generally</u> <u>First Remand Results</u>.  Garg filed a Motion for Judgment on the Agency Record and Comments on the Remand determination on July 31, 2023, challenging Commerce's application of adverse inferences when selecting among the facts otherwise available, arguing that it was not supported by substantial evidence and contrary to law.  Pl. Mot. J. Agency R. and Cmts. on Remand Redetermination at 18–28, Jul. 31, 2023, ECF No. 53.  Garg also challenged Commerce's application of its differential pricing methodology, claiming that its use of and calculations pursuant to the Cohen's d test was in error and unsupported by substantial evidence, and further that it had exhausted its administrative remedies with respect to the challenge.  <u>Id.</u> at 28-36.

The Court remanded Commerce's decision in part, concluding that Commerce's application of facts otherwise available with adverse inferences was not reasonable on the record.  <u>Garg I</u>, 698 F.Supp.3d at 1237.  The Court explained that Commerce failed to indicate whether it sought to apply adverse inferences under 19 U.S.C. §§ 1677e(a) or 1677e(b).  <u>Id.</u>  The Court rejected Defendant's position that Commerce's invocation of Section 1677e(b) was reasonably discernible, concluding that the

presence of conflicting language as to which provision was applied undermined Defendant's position.  Id. at 1238.  To the extent that Commerce relied upon 19 U.S.C. § 1677e(b), record evidence did not support Defendant's position that Garg "needed to compel its unaffiliated supplier to submit the information as a condition of conducting business."  Id. (citing Prelim. Decision Memo. at 10-11; Final Decision Memo. at 42).  Likewise, to the extent it relied upon Section 1677e(a) Commerce failed to explain how "applying an adverse inference will lead to an 'accurate rate, promote cooperation, and thwart duty evasion.'"  Id. (citing Canadian Solar International Limited v. United States, 415 F.Supp.3d 1326, 1333 (Ct. Int'l Trade 2019) ("Canadian Solar II")) (citing Mueller, 753 F.3d at 1232–36).  On remand, the Court instructed Commerce to invoke and explain the specific statutory provision on which it relies in making its determination.  Id. at 1239.

Commerce filed the Second Remand Results on July 8, 2024.  See generally Second Remand Results.  Commerce reconsidered its determination and, under respectful protest, modified Garg's dumping margin calculations.  Second Remand Results at 3.  Commerce employed 19 U.S.C. § 1677e(a), relying on partial facts otherwise available without an adverse inference to fill the gap in information.  Id. Commerce concluded that it could not find that Garg had control over or was able to induce the cooperation of the supplier, and therefore could not apply an adverse inference under Section 1677e(a). Id. at 11. Further, Commerce found in its remand redetermination that Garg "cooperated to the best of its ability to comply with

Commerce's requests for the COP [cost of production] information," and thus it could not apply adverse inferences under Section 1677e(b).  Id. at 10.  Because it did not have evidence to support an application of adverse inferences under either Section 1677e(a) or 1677e(b), Commerce relied only on partial facts otherwise available without an adverse inference pursuant to Section 1677e(a).  Id.

On August 7, 2024, Garg and Defendant-Intervenor Nucor Tubular Products, Inc. ("Nucor") submitted their comments in response to the Second Remand Results. See generally [Garg's] Cmts. [Second Remand Results], Aug. 7, 2024, ECF No. 79 ("Garg Cmts."); [Nucor's] Cmts. [Second Remand Results], Aug. 7, 2024, ECF No. 80 ("Nucor Cmts.").  On September 20, 2024, Defendant filed its comments in support of the Second Remand Results.  See generally [Defendant's] Reply to Cmts. [Second Remand Results], Sept. 20, 2024, ECF No. 84 ("Defendant's Reply to Cmts."). Also on September 20, 2024, Garg and Nucor submitted their replies to comments on the Second Remand Results. See generally [Garg's] Reply to Cmts. [Second Remand Results], Sept. 20, 2024, ECF No. 85 ("Garg Reply to Cmts."); [Nucor's] Reply to Cmts. [Second Remand Results], Sept. 20, 2024, ECF No. 83 ("Nucor Reply to Cmts.").

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final determination in an administrative review of an antidumping ("AD") order. "The court shall hold unlawful any determination, finding, or conclusion found … to

be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co., Ltd. v. United States, 968 F.Supp.2d 1255, 1259 (Ct. Intl Trade 2014) (internal citations and quotations omitted).

## DISCUSSION

Plaintiff asks the Court to sustain Commerce's remand redetermination calculating Garg's rate using partial facts otherwise available without an adverse inference, Garg Cmts. at 2, 11, and once again asks this Court to set aside Commerce's application of its differential pricing methodology in calculating the dumping margin. Garg Cmts. at 2–11.  Plaintiff claims that the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 144 S.Ct. 2244 (2024) ("Loper Bright") excuses its failure to exhaust administrative remedies with regard to its challenge to Commerce's differential pricing methodology.  Id. at 3–4.  Commerce reconsidered its prior decision to use facts otherwise available with adverse inferences when calculating Garg's weighted-average dumping margin. See generally Second Remand Results. Under respectful protest, Commerce uses facts otherwise available without an adverse inference to supply missing cost of production information because it could not identify record evidence that Garg had sufficient leverage over its supplier to warrant an adverse inference. Second Remand Results at 12.  Nucor disagrees with Commerce's decision to use facts otherwise available without an adverse inference

because it believes Commerce could have supported a decision to apply an adverse inference using the <u>Mueller</u> framework under 19 U.S.C. § 1677e(a). <u>See</u> <u>Mueller</u>, 753 F.3d at 1232; Nucor Cmts. at 1.  Defendant argues that Commerce's Second Remand Redetermination complied with this Court's remand order and is supported by substantial evidence, and that Plaintiff failed to exhaust its administrative remedies concerning Commerce's differential pricing methodology.  Defendant's Reply to Cmts. at 4–15.

## I.    Partial Facts Otherwise Available without an Adverse Inference

In its remand redetermination Commerce, under respectful protest, uses facts otherwise available without employing adverse inferences pursuant to 19 U.S.C. § 1677(a). <u>Second Remand Results</u> at 3, 10. Commerce concedes that on this record it lacks support to establish that Garg failed to cooperate to the best of its ability or possessed sufficient leverage to induce cooperation to warrant an adverse inference. <u>Second Remand Results</u> at 12. Nucor believes Commerce could have supported its redetermination "consistent with the <u>Mueller</u> framework." Nucor Cmts. at 3. Plaintiff asks the Court to sustain the remand redetermination. Garg Cmts. at 2.  For the reasons that follow, Commerce's remand redetermination is sustained.

In determining a dumping margin, Commerce relies on information submitted by respondents.  <u>See</u> <u>Nan Ya Plastics Corp., Ltd. v. United States</u>, 810 F.3d 1333, 1338 (Fed. Cir. 2016).  Where information necessary to Commerce's calculation is not supplied by parties or is otherwise unavailable on the record, Commerce applies 19

U.S.C. § 1677e(a) to fill the gap in information. 19 U.S.C. § 1677e(a); see also Mueller,

753 F.3d at 1232; Canadian Solar Int'l Ltd. v. United States, 378 F.Supp.3d 1292,

1316 (Ct. Int'l Trade 2019).  Typically, Commerce fills the gap using "facts otherwise

available" and selects facts from the record.  See 19 U.S.C. § 1677e(a).

     Where "an interested party has failed to cooperate by not acting to the best of

its ability to comply with a request for information," however, the statute permits

Commerce to apply "an inference that is adverse to the interests of the party in

selecting among the facts otherwise available." 19 U.S.C. § 1677e(b); see also Xiping

Opeck Food Co., Ltd. v. United States, 222 F.Supp.3d 1141, 1157 (Ct. Int'l Trade

2017) (holding that Commerce may apply an adverse inference where an interested

party has failed to cooperate).  A party acts to the 'best of its ability' when it puts

forth "its maximum effort to provide Commerce with full and complete answers to all

inquiries in an investigation." Nippon Steel Corp. v. United States, 337 F.3d 1373,

1382 (Fed. Cir. 2003).  The purpose of 19 U.S.C. § 1677e(b) is to "encourage future

cooperation by 'ensuring that the party does not obtain a more favorable result by

failing to cooperate than if it had cooperated fully.'"  Fine Furniture (Shanghai) Ltd.

v. United States, 748 F.3d 1365, 1373 (Fed. Cir. 2014) (quoting Uruguay Round

Agreements Act ("URAA"), Statement of Administrative Action, H.R. Doc. No. 103 –

316, vol. 1, at 870 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199 ("SAA")); see

also KYD, Inc. v. United States, 607 F.3d 760, 768 (Fed. Cir. 2010) ("Congress

intended for Commerce to use [adverse inferences] to induce cooperation with its antidumping investigations").

Whether a party has failed to use its best efforts is context specific. See e.g., Jinko Solar Imp. & Exp. Co., Ltd. v. United States, 701 F.Supp.3d 1367, 1394 (Ct. Int'l Trade 2024).  In Jinko, although the respondent did not have control over its supplier, the record demonstrated that it knew of the supplier's repeated failure to cooperate and "continue[d] to purchase from a supplier who it kn[ew] ha[d] been non-compliant in the past." Id.  The Court explained that the respondent made no showing it had attempted to induce cooperation, and therefore did not satisfy the requirement to "put forth maximum effort" under Section 1677e(b).[4]    Id. Consequently, the Court sustained Commerce's application of an adverse inference under 19 U.S.C. § 1677e(b) because the respondent failed to cooperate pursuant to its statutory obligation. Id.

The Court of Appeals has stated that in limited circumstances Commerce may, under 19 U.S.C. § 1677e(a), also apply adverse inferences absent a showing that a respondent had failed to use its best efforts under 19 U.S.C. § 1677e(b). Mueller, 753 F.3d at 1232-35. Mueller acknowledges that Commerce could rely on the combined

---

[4] Although the Court explained it is not its "role . . . to imagine efforts [the respondent] could have made to try to secure compliance," it offered examples of efforts the respondent could have taken, for example, "incentivizing compliance with suppliers, i.e., offer[ing] to pay more or establish[ing] an agreement to keep information confidential." Jinko, 701 F.Supp.3d at 1394.

policy rationales of fostering accuracy and inducing compliance or thwarting duty evasion.  Id. at 1232-33;[5]  see also  Risen Energy Co., Ltd. v. United States, 477 F.Supp.3d 1332, 1341-45 (Ct. Int'l Trade 2020).  As to accuracy, in Mueller the Court concluded that Commerce failed to support a determination that an adverse inference would foster greater accuracy and thus remanded to Commerce.  Mueller, 753 F.3d at 1232-33 (explaining that record evidence demonstrated that Mueller's discount was far less than what would be remedied by the rate Commerce proposed and that Commerce failed to explain why a larger data set would undermine accuracy); see also Canadian Solar II, 415 F.Supp.3d at 1334-35 (holding that Commerce failed to meet the accuracy analysis requirements set forth in Mueller when applying facts otherwise available with an adverse inference under Section 1677e(a)).  As Commerce had relied on both accuracy and inducement/anti-evasion rationales, the Court of Appeals remanded due to Commerce's failure to support its accuracy rationale. Mueller, 753 F.3d at 1232-33.

Nonetheless, the Court of Appeals went on to opine on the rationale of inducing compliance or thwarting duty evasion, explaining that Commerce may "rely on such policies as part of a margin determination for a cooperating party like Mueller, as long as the application of those policies is reasonable on the particular facts and the

---

[5] Mueller addressed both the accuracy and inducement rationales but explained that Commerce used both to justify its approach and therefore if either rationale fell short it would remand to Commerce. Mueller, 753 F.3d at 1232.

predominant interest in accuracy is properly taken into account as well." <u>Mueller</u> 753

F.3d 1227 at 1233.   Explicating the inducement rationale, the Court added, for

inducement purposes, it is "potentially unfair to the cooperating party" if the party

has "no control over the non-cooperating suppliers." <u>Id.</u> at 1235.

Here, in its remand redetermination, Commerce applies facts otherwise

available without an adverse inference.  <u>See</u> <u>Second Remand Results</u> at 11.  First,

Commerce determines that "Garg Tube cooperated to the best of its ability to comply

with Commerce's requests" and an application of adverse inferences under Section

1677e(b) is not supported by the record. <u>Id.</u> at 10. Commerce then concludes that it is

unable to impose an adverse inference using Section 1677e(a).  <u>Id.</u> at 11. Commerce

takes note of this Court's decision in <u>Garg I</u>, which invoked the Court of Appeals

admonition in <u>Mueller</u> that "if the cooperating entity has no control over the non-

cooperating suppliers, a resulting adverse inference is potentially unfair to the

cooperating party." <u>Garg I</u>, 698 F. Supp. 3d at 1239 (quoting <u>Mueller</u>, 753 F.3d at

1235). Commerce takes note of the <u>Mueller</u> framework for applying an adverse

inference under Section 1677e(a), noting that "Commerce must [also] further support

its determination by addressing the factors invoked by <u>Mueller</u>, including how

applying an adverse inference will lead to an 'accurate rate, promote cooperation, and

thwart duty evasion.'"  <u>Second Remand Results</u> at 9.   Ultimately, Commerce

concludes that Garg was not in the position to induce cooperation and therefore it

cannot apply an adverse inference using Section 1677e(a).[6]  Id. at 12.  Commerce's remand redetermination on this issue is reasonable on this record.

In making its redetermination under respectful protest Commerce expresses concern that "a respondent's significant and continued use of non-cooperative suppliers provides a cloak of invisibility which may shield the suppliers unfair pricing behavior" and without application of an adverse inference, there is no incentive for the respondent or suppliers to provide Commerce with the requested information. Second Remand Results at 14–15. Commerce notes that it will be "difficult, if not impossible, for Commerce to identify substantial evidence of the respondent's market power or leverage over the supplier." Id. at 13. However, Mueller requires leverage to proceed with an adverse inference under using Section 1677e(a). Mueller, 753 F.3d 1227 at 1233.

Nonetheless, as Commerce seems to acknowledge, Garg's lack of leverage in this review may not excuse its failure to secure information in future reviews. Commerce notes that Garg could "modify its business practices in order to obtain complete [cost of production] information from its unaffiliated suppliers in any future

---

[6] Although Commerce does not explicitly state, it is reasonably discernible from its invocation of the Mueller factors that it concludes the record lacks evidence supporting an adverse inference to thwart duty evasion or lead to a more accurate rate. Second Remand Results at 9, 12. Neither Commerce nor Nucor point to any evidence that would support a conclusion that imposing an adverse inference would improve accuracy or thwart duty evasion. See generally Defendant's Reply to Cmts; Nucor Cmts.; Nucor Reply to Cmts.

segments. . . " <u>Id.</u> at 14.  Indeed, this Court has explained that although a respondent may not have leverage over a supplier for past sales, it may have leverage over future sales and therefore where there are repeat customer supplier relationships, more is required than simply claiming a lack of leverage.  <u>See</u> <u>Jinko</u>, 701 F.Supp.3d at 1393 (requiring respondents demonstrate efforts to leverage relationships).

Thus, Nucor's complaint "that Commerce has now asked the same companies for the same cost information in multiple reviews across multiple years" falls short.[7] Nucor Cmts. at 2.  Here, Commerce concedes that although Garg had been asked for Supplier A's information in the prior review, this review "was initiated well before the issuance of the final results of the immediately preceding review."  <u>Second Remand Results</u> at 16.  Therefore, Commerce's remand redetermination on this issue is sustained.

## II.    **Differential Pricing**

Garg challenges Commerce's continued application of differential pricing methodology in calculating the dumping margin, arguing that Commerce erred by applying the Cohen's d test and in calculating the Cohen's d denominator. Garg Cmts.

---

[7] Nucor also argues that Commerce's analysis regarding [[          ]] "should not be viewed in isolation" from the missing information from Garg's other suppliers.  Nucor Cmts. at 2.  Commerce explains in its remand redetermination that Garg's business relationships with other suppliers and their failures to cooperate with Commerce's requests for information "have no bearing on Garg Tube's ability to induce cooperation over [[          ]], the supplier relevant to these final results of redetermination."  <u>Second Remand Results</u> at 18.

Court No. 21-00169                                                        Page 16
**PUBLIC VERSION**

at 2–3; <u>see also</u> Pl. Mot. J. Agency R. and Cmts. on Remand Redetermination at 28–36, Jul. 31, 2023, ECF No. 53.  In <u>Garg I</u>, the Court found that Garg failed to exhaust its administrative remedies in challenging the differential price methodology used by Commerce. <u>Garg I</u>, 698 F.Supp.3d at 1240. Accordingly, Commerce continued to apply the Cohen's d test in its redetermination. <u>Second Remand Results</u> at 20. Garg now argues its failure to exhaust does not thwart its challenge because <u>Loper Bright</u> acts as an intervening legal authority, and "renders the exhaustion requirement inapplicable." Garg Cmts. at 3 (citing <u>Loper Bright</u>, 144 S.Ct. 2244 (2024)). Specifically, Garg argues that when <u>Loper Bright</u> overruled <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984) it called into question this Court's approval of the differential pricing methodology which is still on appeal in <u>Stupp</u>.[8]  <u>Garg Cmts.</u> at 3–4.  Defendant argues that Plaintiff fails to show how

---

[8] In <u>Stupp</u>, the Court of Appeals considers again Commerce's differential pricing methodology.  <u>Stupp Corp. v. United States</u>, 5 F.4th 1341, 1346 (Fed. Cir. 2021).  In the methodology, after identifying distinct product groups, Commerce segments those groups by time, customer and region to create several test and comparison groupings.  <u>Id.</u>  Commerce then applies three tests, the Cohen's d test, the ratio test and the meaningful difference test. <u>Id.</u>  The Court of Appeals had previously concluded that Commerce's meaningful difference analysis was reasonable using <u>Chevron</u>. <u>Apex Frozen Foods Priv. Ltd. v. United States</u>, 862 F.3d 1337, 1348 (Fed. Cir. 2017). In <u>Stupp</u>, the Court of Appeals sustained Commerce's use and application of its methodology for all but the "Cohen's d test," which evaluates whether the test group differs significantly from the comparison group. <u>Id.</u> The Court of Appeals explained "SeAH argues that the data in this case did not satisfy the conditions required to achieve meaningful results from the Cohen's d test: in particular, the requirements that the test groups and the comparison groups be normally distributed, of sufficient

(footnote continued)

<u>Loper Bright</u> would materially alter any issue in this case.  Defendant's Reply to

Cmts. at 12-13.

Before an action may be heard by the Court, parties must exhaust their

administrative remedies.  28 U.S.C. § 2637; <u>see</u> <u>Corus Staal BV v. United States</u>, 502

F.3d 1370, 1379 (Fed. Cir. 2007); <u>see also</u> <u>Boomerang Tube LLC v. United States</u>, 856

F.3d 908, 912–13 (Fed. Cir. 2017) (citing <u>Kingdomware Techs., Inc. v. United States</u>,

579 U.S. 162, 172 (2016), for the assertion that the word "shall" connotes a

requirement in the context of 28 U.S.C. § 2637(d)).  The exhaustion doctrine functions

to "promote[] judicial efficiency and conserve judicial resources, by affording the

agency the opportunity to rectify its own mistakes (and thus to moot controversy and

obviate the need for judicial intervention)." <u>Ta Chen Stainless Steel Pipe, Ltd. v.</u>

<u>United States</u>, 342 F.Supp.2d 1191, 1206 (Ct. Int'l Trade 2004) (alterations in

original).  The Supreme Court has explained "[a] reviewing court usurps the agency's

function when it sets aside the administrative determination upon a ground not

theretofore presented and deprives the [agency] of an opportunity to consider the

matter, make its ruling, and state the reasons for its action." <u>Unemployment Comp.</u>

---

size, and of roughly equal variances." <u>Id.</u> at 1357.  The Court agreed with SeAH and
vacated and remanded to Commerce to clarify its determination stating, "the
evidence and arguments before us call into question whether Commerce's application
of the Cohen's d test to the data in this case violated the assumptions of normality,
sufficient observation size, and roughly equal variances associated with that test." <u>Id.</u>
at 1360.

Cmm'n of Alaska v. Aragon, 329 U.S. 143, 155 (1946); see also Gerber Food (Yunnan) Co. Ltd., 601 F.Supp.2d at 1379 (citing Aragon, 329 U.S. at 155).

Parties are excused from the exhaustion requirement when an intervening judicial decision materially affects an issue before the Court. See Siemens Gamesa Renewable Energy v. United States, 621 F.Supp.3d 1337, 1348 (Ct. Int'l Trade 2023) (citing Hormel v. Helvering, 312 U.S. 552, 558–59 (1941); Gerber Food (Yunnan) Co., 601 F.Supp.2d. at 1380); cf. Papierfabrik Aug. Koehler AG v. United States, 36 CIT 1632, 1635 (Ct. Int'l Trade 2012) ("the intervening judicial decision exception applies because there was a change in the controlling law on the use of zeroing"). To apply, the judicial decision must interpret existing law that would "materially alter the result" of the case. See Gerber Food (Yunnan) Co., 601 F.Supp.2d at 1380 (citing Hormel, 312 U.S. at 558–59).

In Loper Bright, the Supreme Court overruled Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) holding that courts must exercise their independent judgment in deciding whether an agency has acted within

its statutory authority.[9]  Loper Bright, 144 S.Ct. at 2273.[10]  Courts exercise their

independent judgment in deciding statutory meaning.  Id. at 2263.  In doing so, courts

use traditional tools of statutory interpretation, id. at 2266, specifically courts

examine the "statute's text, structure, and legislative history, and apply the relevant

canons of interpretation." Delverde, SrL v. United States, 202 F.3d 1360, 1363 (Fed.

Cir. 2000); see also e.g. Ventura Coastal LLC v. United States, No. 23-9 (Ct. Int'l

Trade Nov. 7, 2024).  Starting with the text, the plain meaning of the word is

ascertained in context.  Yates v. United States, 574 U.S. 528, 537 (2015).  Dictionary

definitions, although helpful, are not solely dispositive, and must be weighed

considering the statute as a whole. Id.

In ascertaining the meaning of a statute courts may conclude that Congress

explicitly delegated authority to the agency to give meaning to the terms so long as it

---

[9] Under Chevron a reviewing court would
> first assess "whether Congress has directly spoken to the precise question at issue." If, and only if, congressional intent [was] "clear," that [was] the end of the inquiry. But if the court determine[d] that "the statute [was] silent or ambiguous with respect to the specific issue" at hand, the court [would], at Chevron's second step, defer to the agency's interpretation if it "[was] based on a permissible construction of the statute."

Loper Bright, 144 S. Ct. (citing Chevron) (citations omitted).

[10] Although Loper Bright involved review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., while this Court reviews this redetermination under 28 U.S.C. § 2640, the logic of Loper Bright applies here because, similar to the APA, 28 U.S.C. § 2640 directs review to 19 U.S.C. § 1516a(a)(2)(B)(iii) providing that the court will set aside a determination found to be "contrary to law." See 28 U.S.C. § 2640 and 19 U.S.C. § 1516a(a)(2)(B)(iii).

Court No. 21-00169                                                                        Page 20
**PUBLIC VERSION**

is consistent with the Constitution. <u>Loper Bright</u>, 144 S.Ct. at 2273.  When a statute is best interpreted to delegate discretionary authority to an agency a court must "interpret the statute to effectuate Congress's will, subject to constitutional limitations. <u>Id.</u> at 2263 (citing <u>Batterton v. Francis</u>, 432 U.S. 416, 425 (1977)). Or Congress may give an agency flexibility by its use of open-ended terms such as "reasonable" or "appropriate." <u>Loper Bright</u>, 144 S.Ct.  at 2263 (quoting <u>Michigan v. EPA</u>, 576 U.S. 743, 752 (2015)).

Here, Garg's argument that the intervening decision in <u>Loper Bright</u> excuses its duty to exhaust its remedies must fail because <u>Loper Bright</u> does not materially alter the result in this case. Garg argues neither this Court nor the Court of Appeals may defer to Commerce's adoption of its differential pricing methodology as its interpretation of 19 U.S.C. § 1677f-1(d)(1)(B) in <u>Stupp</u>, which is still on appeal, now that <u>Chevron</u> has been overruled.[11]  Garg Cmts. at 4. Therefore, Garg asserts that under <u>Loper Bright</u>, the Court of Appeals would no longer uphold Commerce's differential pricing methodology. Garg Cmts. at 4.  However, Garg's argument fails because Congress afforded flexibility to Commerce under 19 U.S.C. § 1677f-1(d)(B) by inserting the phrase "differ significantly," and therefore the decision in <u>Loper Bright</u> does not materially alter an issue in this case. <u>See</u> 19 U.S.C. § 1677f-1(d)(1)(B).

---

[11] The Court of Appeals' most recent decision in <u>Stupp</u> does not mention <u>Chevron</u>. <u>Stupp v. United States</u>, 5 F.4th 1341.  <u>Stupp</u> does however rely upon its prior determination in <u>Apex Frozen Foods v. United States</u>, 862 F.3d at 1348, which did invoke <u>Chevron</u>.

Court No. 21-00169                                                    Page 21
**PUBLIC VERSION**

In 1993 as part of the URAA, Congress implemented subsection (d) of 19 U.S.C.

Section 1677f-1. <u>See generally</u> URAA Statement of Administrative Action, H.R. Doc.

No. 103 – 316, vol. 1 (1994), <u>reprinted in</u> 1994 U.S.C.C.A.N. 4040, 4178 ("SAA")).  This

subsection was added to address targeted dumping (where an exporter sells at one

price to certain customers or regions and higher prices to other customers or regions).

<u>Id.</u> at 4177-78. Under subsection (d) Commerce could compare average normal values

to individual export prices ("A-T"), minimizing the likelihood of targeted dumping. <u>Id.</u>

at 4177—78.  Subsection (d) allows Commerce to use the A-T methodology whenever

it establishes that there is a pattern of prices that differ significantly, and it explains

why A-A would be unable to account for such differences in sales prices. <u>Id.</u> at 4178.

> (B) Exception
>
> The administering authority may determine whether the subject
> merchandise is being sold in the United States at less than fair value by
> comparing the weighted average of the normal values to the export
> prices (or constructed export prices) of individual transactions for
> comparable merchandise, if--
> (i) there is a pattern of export prices (or constructed export prices) for
> comparable merchandise that differ significantly among purchasers,
> regions, or periods of time, and
> (ii) the administering authority explains why such differences cannot be
> taken into account using a method described in paragraph (1)(A)(i) or
> (ii).

19 U.S.C. § 1677f-1(d)(B).

The text of the statute and its legislative history indicate that Congress gave

Commerce flexibility by its use of the open-ended term "differ significantly."  <u>Loper</u>

<u>Bright</u>, 144 S.Ct.  at 2263.  The word "significantly" is an open-ended qualifier, akin

to "appropriate" or "reasonable." See Kisor v. Wilkie, 588 U.S. 558, 632 (2019) (discussing open-ended terms like "reasonable," "appropriate," "feasible," or "practicable"); see also Loper Bright 144 S.Ct. at 2263. Congress' mandate to Commerce to assess not merely whether prices differ, but whether they differ "significantly" necessarily affords Commerce flexibility to assess the degree of difference depending on the particular context. Moreover, Congress prefaced its direction to Commerce with the word "may,"[12] making clear that Commerce would be exercising discretion in determining whether prices "differ significantly." See 19 U.S.C. § 1677f-1(d)(1)(B).

The URAA's SAA confirms Congress' delegation under Section 1677f-1. The SAA is the authoritative expression by the United States concerning the interpretation of the statute. See 19 U.S.C. § 3512 ("The [SAA] . . . shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding . . ."). In the SAA Congress acknowledges the contextual nature of determinations under Section 1677f-1, explaining that the statute provides for Commerce to proceed on a case-by-case basis.

> In addition, the Administration intends that in determining whether a
> pattern of significant price differences exist Commerce will proceed on a

---

[12] The Merriam-Webster dictionary defines the word "may" as "have permission to" or "be free to." May, merriam-webster.com, https://www.merriam-webster.com/dictionary/may (last visited Nov. 4, 2024).

> case-by-case basis, because small differences may be significant for one industry or one type of product, but not for another.

1994 U.S.C.C.A.N. at 4178. The mandate to proceed "case by case" confirms the flexibility provided by the words of the statute. Therefore, the words of the statute as well as the SAA make clear that Congress delegated to Commerce the power to use its discretion when determining whether prices differ significantly under 19 U.S.C. § 1677f-1.

Finally, the context in which the phrase "differ significantly" appears within the statute supports the conclusion that Congress meant to afford flexibility to Commerce. Section 1677f-1, which sets forth the sampling and averaging process, grants a great deal of discretion to Commerce. Subsection (a) allows for averaging and sampling and allows Commerce to "decline to take into account adjustments which are insignificant." 19 U.S.C. §1677f-1(a). Further, the selection of averages and statistically valid samples "shall rest exclusively with" Commerce. 19 U.S.C. §1677f-1 (b). Commerce is given discretion to use a sample where it is not "practicable" to make individual weighted average margin determinations." 19 U.S.C. § 1677f-1 (c)(2). Thereafter, Congress sets forth the general rule for determinations of less than fair value subject to the exception considered here. Thus, this subsection of the statute, read along with the section as a whole, confirms that Congress meant to afford the agency with flexibility and discretion in making the relevant determination. Therefore, although <u>Loper Bright</u> overruled <u>Chevron</u>, and the Court

Court No. 21-00169                                                                    Page 24
**PUBLIC VERSION**

of Appeals previously relied upon <u>Chevron</u> to sustain Commerce's differential pricing

methodology, for this section of the Tariff Act, <u>Loper Bright</u> affects no material issue

in this case.

**CONCLUSION**

For the foregoing reasons, the Court sustains Commerce's remand

redetermination. Judgment will be entered accordingly.

 /s/ Claire R. Kelly  
Claire R. Kelly, Judge

Dated:         November 7, 2024  
               New York, New York