Business Proprietary
Treatment Requested

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC, <br><br> Plaintiffs, <br> and <br><br> Zhejiang Jingli Bearing Technology Co., Ltd., <br><br> Consolidated Plaintiff, <br><br><br> v. <br><br> United States. <br><br> Defendant. | Cons. Ct No. 24-00025 |

**Comments on Remand**

David Craven
Craven Trade Law LLC
3744 N Ashland Avenue
Chicago, IL 60613
david.craven@tradelaw.com
(773) 709-8506

February 27, 2026

Counsel to Plaintiffs Shanghai
Tainai Bearing Co., Ltd. and
C&U Americas, LLC

## Table of Contents

I.    Introduction and Summary of Argument ......................................................1

   A. Introduction ...................................................................................1

   B. Summary of Argument ...................................................................2

II.    Argument ...................................................................................................2

   A. Cohen's D and the Alternative Are Mere Tools ........................................2

   B. Tainai's Data Demonstrates Minimal Differences..................................3

   C. The Department's Analysis Fails to Determine What is
      Significant.....................................................................................6

   D. The Actual Calculation Was Flawed.....................................................12

III.    Conclusion ...............................................................................................13

TABLE OF AUTHORITIES

***Court:***

*Cresswell Trading Co., Inc. v. United States*, 15 F.3d 1054 (Fed. Cir. 1994) ........10

*Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997)...............7

*Stupp Corporation v. United States*, 5 F.4th 1341 (Fed. Cir. 2021).......................11

*USX Corp. v. United States*, 11 CIT 82, 655 F. Supp. 487 (1987)...........................7

***Statutory:***

19 U.S.C. 1677f-1 (d)(1)(B) ..........................................................................4, 5, 10

***Administrative:***

Statement of Admin. Action H.R. Doc. No. 103- 316, at 842-43 (1994)............8, 10

19 C.F.R. § 351.224(g) ...................................................................................9

19 C.F.R. §351.525(b) ...................................................................................9

19 C.F.R. §351.525(d) ...................................................................................9

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC,<br><br>                              Plaintiffs,<br>and<br><br>Zhejiang Jingli Bearing Technology Co., Ltd.,<br><br>                        Consolidated Plaintiff,<br><br><br>        v.<br><br>United States.<br><br>                        Defendant. | Cons. Ct No. 24-00025 |

**Comments on Remand**

I.      **Introduction and Summary of Argument**

A. Introduction

Pursuant to the order of this Court, Plaintiffs Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC hereby supply their comments on the Department's Remand Determination.  As demonstrated below, the remand determination should be rejected by the Court.

B. Summary of Argument

- Cohen's D and the Department's replacement for Cohen's D are mere tools to determine whether or not the data meets the statutory test.  The Department must consider the underlying facts, and not simply rely upon such tests.

1

- The Data submitted by the plaintiffs conclusively establishes that there is no pattern of significant differences among purchasers, regions or time periods. The data shows that the supermajority (well in excess of 90%) of the prices charged by plaintiffs on their invoices changed no more than once during the POR.

- The Department's analysis fails to properly establish what constitutes a "significant" difference and ignores the various Department regulations which use the word "significant" and instead tries to define significant as anything other than *de minimis*. Such argument is unavailing and renders the actual language of the statute a nullity. The 2% +/- standard is arbitrary and capricious on its face. Simply put the Department's new differential pricing analysis does not comport with the statute and is arbitrary and capricious.

- The actual calculation by the Department was flawed. It ignored clear evidence of record regarding the identity of the customers, improperly split sale to single customers, and established test groups without providing the basis for establishing such test groups. To the extent that the Department continues to use its methodology, it must correct these errors.

II.  **Argument**

A. Cohen's D and the Alternative Are Mere Tools

Cohen's D, and the alternative now being proposed by the Department are mere tools. These methods are simply **a** tool to determine whether there is a pattern of prices that differ significantly among purchasers, regions, or time periods. The primary purpose of the differential pricing analysis is to find a pattern of prices that differ significantly, not simply whether some tool produces an artificial result. We submit that a tool is flawed if it does not permit the change of any price, and yet that is effectively what the tool selected by the Department does. The actual data should control. In this case, we have a straightforward set of data with few points for analysis. Tainai attached to its initial comments an analysis derived from data of record. This shows that applying a comparatively simple analysis establishes that

2

such pattern cannot exist. (See RCR[1] at 17.)

We further note that Prices between bearings can vary significantly based upon their size, design and components. Such price variance, however, is clearly not based on the purchaser, region or time period, except to the extent that Customer X is more likely to buy type A bearings and Customer Y is more likely to buy type B bearings. Such is an example of correlation, not causation. Accordingly, any analysis must be on a CONNUM basis. While significant price variances based on purchaser, region or time period may create issues with respect to the comparison methodology, the rule was not intended to forbid price changes. As shown in the analysis submitted with the initial comments,

B. Tainai's Data Demonstrates Minimal Differences

The actual data demonstrates that there are **minimal** differences in pricing when the analysis is conducted on a CONNUM basis and that such limited price changes are [

]. This analysis[2] shows that [          ] of the sales were made at one price, [          ] were made at a second price, that [          ] of the sales were made at a third price, [          ] of the sales were made at a fourth price, and [          ] of the sales were made at a fifth price. (RCR 1 at 17) For this final CONNUM with the most changes, while the price changed five times, such changes were in a narrow band with a price of [                    ] of the sales of this CONNUM to [                    ] of the sales

---

[1] Note that this matter was initially before Judge Vaden who requested that the record be identified by Appendix number and Bates Number. We have identified documents from the original record by both the APPX number and also by the designations "CR" for Confidential Record and "PR" for Public Record. For purposes of the Remand, we have identified the documents by "RCR" for remand confidential record and "RPR" for remand public record. To the extent that a data file from the original record is referenced, as it was not within the APPX, it has been referenced solely with the record index number ("CR").

[2] As noted by the Department, due to a clerical error, the analysis did omit a single CONNUM from the analysis. The total "value or volume" of this omitted CONNUM was not significant and it does not change the overall analysis.

3

with the super majority falling at either [                    ] of all sales or [

       ] of all sales. ("Id") Furthermore, the percentage of sales represented by this

CONNUM only represent [        ] of total of sales. In other words [        ] of all

merchandise in all CONNUM's changed price no more than once. The top four

CONNUM's by quantity had ONE price change and such top 4 CONNUM's

represented [         ] of all sales. (RCR 1 at 17)  The CONNUM's with more than

1 price change represented only [          ] of all sales and the CONNUM's with more

than 2 price changes represented [         ] of all sales.   Furthermore, while the prices

between CONNUM's showed significant differences, the prices within the

CONNUM's did not show a significant difference.  (Using the plain and ordinary

meaning of significant.)    Using the four largest CONNUM by volume, which

represented nearly [       ] of all sales,  the price changes ranged from [        ] to

[      ].  (RCR 1 at 17)

       And yet, even though [         ] of sales had NO changes of price during the

POR and [        ] changed no more than once, the Department found that a

significant percentage of the sales "passed" the price differential test and thus

purportedly "confirmed "a pattern of prices that differed significantly.  This raises

significant questions as to the validity of the test which produce results which are

contrary to common sense, data and the law.

       The language of the statute (19 U.S.C. 1677f-1 (d)(1)(B)), assuming that it

even applies, is quite clear.  It states:

**(d)Determination of less than fair value**
    **(1)Investigations**
        * * *
        **(B)Exception**
        The administering  authority may   determine   whether
        the subject merchandise is being sold in the United States
        at less than fair value by comparing the weighted average
        of the  normal values  to the export prices (or constructed

4

Public Version

export prices) of individual transactions for comparable merchandise, if—

**(i)** there is a pattern of export prices (or constructed export prices) for comparable merchandise **that differ significantly among purchasers, regions, or periods of time**, and

**(ii)** the administering authority explains why such differences cannot be taken into account using a method described in paragraph (1)(A)(i) or (ii).

19 U.S.C. 1677f-1 (d)(1)(B) (Emphasis Added)

In the remand results, the Department rejected the use of this data by first claiming that while a significant volume of sales [      ] changed no more than once, this was a quantity, not a value analysis. (RCR-8 at 11) The Department further makes an argument that the "prices" showed changes with the greatest value changed and had two different prices during the POR. Initially, this does not take into account the fact that TRB's have a broad range of prices based on size and design. The price is consistent within each CONNUM, but vary between types. This is not extraordinary and is common in business. Furthermore, the Department ignores the fact that applying a "value analysis" shows that [      ] of sales by value changed no more than once, a value nearly the same as the pure quantity number of [      ]. The Department also had the data for the value calculation as Tainai provided both the quantity and price in the exhibit. (RCR 1 at 17). Attached to these comments is a further analysis in which the values are also calculated. (Exhibit RC-1) This expanded exhibit confirms that the volume numbers used in CRC-1 and the price times volumes numbers in expanded CRC-1 show no meaningful difference. The top ten CONNUM's by price and value have a sum of [

], the top two CONNUM's are [

], and the top CONNUM is [

]. Furthermore, the sum of the total quantity and value of the

CONNUM's which changed price twice or more is [                    ] of the total and the changes of more than twice represented a paltry [        ] or [     ]. (Exhibit RC-1)    Whether the argument is based on price or volume, the super-majority of these sales changed no more than once (i.e. had two different prices during the POR). And such changes were significantly below the Department's newly reduced standard of 25%, let alone the historic standard which the Department changed without notice and comment.

Furthermore, the Department argues that the analysis fails because:

Tainai's analysis also fails because the price difference test is based on the net U.S. price, not on the gross unit price as used by Tainai in Exhibit CRC-1. Commerce's dumping margin comparisons are based on the net U.S. price, adjusted for billing adjustments, discounts and rebates, movement and selling expenses. Because the results of the differential pricing analysis considers whether the standard average-to-average comparison method can account for the price difference exhibited in a respondent's pricing behavior in the U.S. market, *i.e.*, whether there is masked dumping that is hidden as a results of the standard average-to-average method, the prices used in the pattern requirement of section 777A(d)(1)(B)(i) of the Act, which is to consider whether conditions exist where masked dumping may be occurring, Commerce uses the equivalent net U.S. prices in the price difference test that it uses when calculating individual dumping margins. As the price adjustments also may vary from sale to sale, net U.S. prices will also vary more from sale to sale than do the gross U.S. prices as relied upon by Tainai. Accordingly, Tainai's analysis is not based on the same data as used in Commerce's price difference test.
Remand at 12 (RCR 8 at 12)

This statement is factually inaccurate.    As shown in attached Exhibit RC-2, which is an extract from the TAIUS004 database (CR 152-153), the Tainai data base shows an absence of billing adjustments, discounts, or rebates.    The net price is the same as the gross price.    This is the price on the invoice which is paid by the customer.    Simply put, the volitional choices, which directly relate to dumping were

6

to maintain the same prices with minimal changes. We submit a single price adjustment, or even two price increases in a CONNUM on an annual basis necessarily does not constitute a pattern of prices which vary significantly among purchasers, regions, and time periods. Nor does charging a price for one model of bearing to one customer and charging a different price for a different model of bearing to a different customer constitute a "pattern of price which vary significantly among purchasers, regions and timer periods". The language of the statute is very clear. In order to apply the alternate methodology, there must be prices **that differ significantly among purchasers, regions, or periods of time.** The very simple and straightforward analysis establishes the absence of prices that "differ significantly" among purchasers, regions and periods of time. The plain language of the statute should control and the ordinary meaning of the words "significantly" should be given full weight.

The Department's determination to reject the plaintiffs' data also falls afoul of the substantial evidence test as it is based on isolated tidbits of data, while ignoring the evidence as a whole. As noted by the Court, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

In this case, the data, taken as a totality shows NO significant differences in pricing, and while the "tools" adopted by the Department may show "differences", such analysis is strained and is based on pulling various data points for a results oriented determination.

7

C. The Department's Analysis Fails to Determine What is Significant

Even if the Department's rejection of plaintiff's data and argument were proper, the analysis used by the Department is fatally defective in a number of ways. Each of these, on its own, should be enough to reject the Department's methodology, but when taken as a totality, the Department analysis cannot stand.

The most egregious of these errors was the use of a +/- 2% standard for determining what constitutes "significant". This two percent band is not discussed in the statute or the regulations and this 2% band is arbitrary and capricious, and the Department fails to properly explain why a difference of +/- 2% is a proper measure of what is significant. Rather the Department cites to regulations which find that 2% is not *de minimis* or small. Remand at 19 (RCR 8 and RPR 6). Commerce needs to provide these explanations. The Statement of Administrative Action mandates a case by case approach. It states in relevant part:

> In addition, the Administration intends that in determining whether a pattern of significant price differences exist, Commerce will proceed on a case-by-case basis, because small differences may be significant for one industry or one type of product, but not for another.")
> H.R. Doc. No. 103- 316, at 842-43 (1994) (emphasis added).

A "one size fits all" two percent approach is not consistent with the case by case basis mandated by the Statement of Administrative Action. Commerce's claim that the two-percent threshold for significance under its new price difference test is reasonable because such threshold is consistent with the two percentage point amount used by Commerce in other contexts, such as the arm's- length test, as well as the threshold for de minimis rates in less-than-fair value investigations is misplaced.

The issue here is not whether Commerce has used a two-percentage point threshold in other contexts, but what should be the threshold for determining whether a percentage difference is "significant" (such that prices of comparable merchandise

8

"differ significantly"). Commerce's consideration of a difference as low as two percentage points to be "significant" in its price difference test is not credible or reasonable, especially in contexts where the statute and regulations do not use the terms "significant" or "significantly."

Furthermore, Commerce's analysis ignores those regulations which actually use the word "significant" as part of the regulatory test. For example, a ministerial error is definitionally "**significant**" under 19 C.F.R. § 351.224(g) only when a correction of the error would alter the margin by at least 25 percent. In the context of 19 C.F.R. §351.525(b), a 25 percent threshold is used to determine whether a subsidy is considered to have a **significant** effect on the production of subject merchandise due to cross-ownership between a utility provider and the producer (i.e., when "the producer of subject merchandise purchases a substantial percentage, normally defined as 25 percent or more"). In addition, countries experience "high" inflation under the regulations only when the rate change is "greater than 25 percent per annum." See 19 C.F.R. §351.525(d).

In sum, the results oriented choice of 2%, which is tied to regulations defining "de minimis", ignores the regulations which actually reference the term "significant" for the purposes of calculations. The fact that something is not *de minimis* or small does not mean that it is "significant". Under the Department's logic, something is significant if it is not *de minimis*. Such interpretation does not comport with the ordinary meaning of the word significant, which necessarily contemplates something more than ordinary.

Furthermore, It has long been Commerce's practice that a "pattern" within the meaning of the statute exists only when apparent price differences are beyond something that might occur by chance. That is, a "pattern of prices that differ significantly among purchasers, regions, or time periods" means that Commerce should examine the extent to which the prices, when ordered by purchaser, region or

9

time period, exhibit differences that have meaning, that have or may have influence or effect, that are noticeably or measurably large, and that may be beyond something that occurs merely by chance.   The burden is on Commerce to establish that the results of its analysis are not arbitrary, but are based on a recognizable pattern that is grounded in substantial evidence.   See *Cresswell Trading Co., Inc. v. United States*, 15 F.3d 1054 (Fed. Cir. 1994) A "pattern" exists within the meaning of the statute only when the evidence allows it to reject the hypothesis that any observed price differences reflect nothing more than random fluctuations, Commerce's new test is not based on this principle.

The Statement of Administrative Action mandates a case by case approach. It states in relevant part:

> In addition, the Administration intends that in determining whether a pattern of significant price differences exist, Commerce will proceed on a case-by-case basis, because small differences may be significant for one industry or one type of product, but not for another.")
> Statement of Administrative Action, H.R. Doc. No. 103- 316, at 842-43 (1994) (emphasis added).

A "one size fits all" two percent approach is not consistent with the case by case basis mandated by the Statement of Administrative Action.

Commerce is permitted to compare weighted-average normal values to individual export prices or constructed export prices (the A-T method) only if Commerce finds that "there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time." 19 U.S.C. § 1677f-1(d)(1)(B) (emphasis added).   In order to apply the A-T method, Commerce must find "a pattern" of prices that differ significantly either among purchasers or among regions or among periods of time. Under its new test, Commerce incorrectly applied the "ratio test" conjunctively (examining whether there is a pattern of prices that differ significantly among

10

purchases, regions, and time periods. The statute, in contrast, is disjunctive ("or" rather than "and"); it requires a pattern of prices that differ significantly "among purchasers, regions, or period of time …".

This error is not simply grammatical. Under the "ratio test," Commerce (1) "calculates the ratio of the total value of sales that pass the price difference test to the total value of sales by the respondent in the United States during the period of review," and (2) "if more than 33 percent of the total value of U.S. sales passes the price difference test, then Commerce will find that a pattern of price differences existed during the period of review." In other words, Commerce calculates a single combined ratio in which the numerator consists of all sales that pass the two percent test for any of the three categories (purchasers, regions, and periods of time) and the denominator consists of all sales. To be consistent with the statute, Commerce instead must find a pattern of significant price differences among "purchasers, regions, or periods of time," by calculating separate ratios for each of these groups. The practical impact of this error is that Commerce has lowered the threshold set forth in the statute for finding a "pattern" and, thus, for applying the exceptional A-T price comparison method.

Furthermore, Commerce has reduced the threshold for the application of the A-T price comparison method to all sales to 33%. This is inconsistent with the position taken by Commerce in *Stupp Corporation v. United States*, 5 F.4th 1341, 1533 (Fed. Cir. 2021). There Commerce stated that it was reasonable to apply the A-T method to all sales if it found 66% of sales were "significantly different" because "when two-thirds or more of a respondent's sales are at prices that differ significantly, then the extent of these sales is so pervasive that" the normal average to average method would not permit Commerce "to separate the effect of the sales where prices differ significantly from those where prices do not differ significantly." Commerce also stated that when it "finds that between one third and two thirds of

11

U.S. sales are at prices that differ significantly … the effect of this pattern can reasonably be separated from sales whose prices do not differ significantly." *Id.* at 1355. Commerce has provided no justification for why this rationale no longer applies and why it now is appropriate to apply the A-T method when it finds that merely 33% of sales "differ significantly".

D. The Actual Calculation Was Flawed

The actual calculation for purposes of the 2% test was flawed.   Initially, the Department ignored clear evidence of record that certain customers had two names during the POR.   Specifically, as noted in Tainai's Supplemental questionnaire response of April 20, 2023, a number of the customers are known by more than one name.   [

.]  In the same fashion, [

.]   See Supplemental Questionnaire Response of April 20, 2023 at page 8.  (APPX085170, CR-115)

Further, other customers changed their name during the POR.  As discussed in the same supplemental questionnaire response, [

] were used interchangeable by Tainai during the POR.   See Supplemental Questionnaire Response of April 20, 2023 at page 7 (APPX085169, CR-115).  In the remand, Customs rejected this claiming that "identifying customers is the responsibility of Tainai"  (Remand at 20, RCR 8 and RPR 6) and further claimed that Tainai did not raise customer consolidation in its case brief.  (Remand at 20, RCR 8 and RPR 6). With regard to the first issue, Tainai clearly DID identify Customers in its responses to the Department and explained that multiple names were used during the POR.   With regard to the second issue, plaintiffs did not raise customer consolidation in its case brief as the issue only became relevant during the course of the remand.

12

Secondly, the Department has still not explained the basis for selecting the test groups. The selected test groups create absurdities such as the same CONNUM being split into two groups. For example, control number [    ] split with a test group of [    ] and a base group of [    ] and a second group with a test group of [    ] and a base group of [    ]. And all of these sales thus were found to exceed the 2% test. The [    ] based on a test group of a single sale, and the single sale based on a test group of [    ]. There are multiple examples of this in the remand calculations. (RCR 3 at 246-249) There is no rational explanation for the selection of the test groups.

In sum, the actual methodology used for selecting the test groups is not disclosed, and to the extent that it is applied, it creates absurd results.

### III.   <u>Conclusion</u>

In conclusion, the remand results should be rejected by the Court. The data and analysis provided by Tainai clearly establishes an absence of a pattern of prices that differ significantly among purchases, regions, and time periods. To the contrary, the data establishes that the net price, that is to say the price invoiced to the customers, on a CONNUM basis were consistent with only a limited number of price changes (the super majority changed price once during the POR) during the POR. Such limited changes clearly show that there is an absence of a pattern of prices that differ significantly. The analysis by the Department is nothing more than a tool, a tool which in this case has produced false results contrary to the straightforward and clear data provided by plaintiffs.

Furthermore, to the extent that the Department elects to rely on its own analysis, if must correct a number of serious flaws, including the use of an arbitrary 2% band which does not constitute a "significant" change when compared with the

other regulations administered by the Department which use the term "significant" in their language.    The regulations cited by the Department do not use the word "significant", and the fact that something is not *de minimis* or ordinary, does not mean that such number is then significant.

Finally, the Department's implementation of its calculation is flawed, including ignoring clear evidence of record.    To the extent that such calculation is used in any further remand, such calculation should be fixed.

Based on the foregoing, this court should reject these remand results and again remand this matter to the Department of Commerce with instructions that the correct these numerous flaws.

Respectfully submitted,

/s/ David Craven
David Craven

Counsel to Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC

Dated: February 27, 2026

14

Public Version

# Exhibit RC-1

## Expanded CRC-1

This exhibit is confidential in its entirety.   This page serves as the public version

Public Version

Exhibit RC-2(a)

Prices Sorted by CONNUM

This exhibit is confidential in its entirety.   This page serves as the public version

Public Version

Exhibit RC-2(b)

Prices Sorted by Sequence Number


This exhibit is confidential in its entirety.   This page serves as the public version

<u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains 4274 words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, the Table of Authorities, the signature block, and the present certificate) according to the word-count function of Microsoft Word for Office 365, the word processing program used to prepare this memorandum.

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Respectfully Submitted,
/s/ David J. Craven
David J. Craven

February 27, 2026